## No. 9668.

BRITISH AND AMERICAN MORTGAGE COMPANY VS. MRS. E. J. RALSTON
AND HUSBAND,

AND

MRS. E. J. RALSTON AND HUSBAND VS. BRITISH AND AMERICAN MORT-
GAGE COMPANY.

### (Consolidated).

Paragraph 4 of art. 739 of the Code of Practice, which empowers a seized debtor to arrest an executory process for the reason "that time has been granted him for paying the debt, although this circumstance be not mentioned in the contract" has reference to. and contemplates only, an agreement made since the execution of the contract and not before. It may be enforced if made part of the contract as a suspensive condition depending upon the happening of an uncertain future event; but not when claimed to have been made before the contract.

Such a previous stipulation, when not included in the contract, will be deemed as having been formally abandoned by the contracting parties.

APPEAL from the Ninth District Court, Parish of Tensas.
Lewis, J.

*Steele & Garrett* for the British and American Mortgage Company, Appellant:

That portion of art. 739. C. P., which provides that the debtor can arrest the sale "when time has been granted to him for paying the debt, although this circumstance be not mentioned in the contract," has no reference to time granted before, but can only mean time granted after the date of the contract. It contemplates an agreement extending the time made subsequent to the contract. Vail vs. Moll et al., 37 Ann. 203; C. P. 739, part 4.

An authentic act makes full proof of what it contains as between the parties; so, without a special averment of fraud, error, ambiguity or the like, the correspondence or negotiations between the parties previous to the date of the contract is inadmissible, for the purpose of contradicting, varying or extending the terms of the authentic act. C. C. 2236; Succession of Tete, 7 Ann. 95.

38

Letters or statements by third persons, not parties to the contract in writing, are inadmissible for the purpose of affecting the written contract, particularly where the agency or authority of such third person is not shown.

Where an amended petition, claiming damages, (being a matter of substance and materially changing the character of plaintiff's action), was never served on defendants, or its allegations put at issue by default or answer, it will not be considered as forming any part of the pleadings. Levy et al. vs. Webber et al., 8 Ann. 439; Brown vs. Brown, 21 Ann. 461; 12 Ann. 60; 4 La. 13; 2 La. 130-392.

An amended petition, containing matters of substance not served or put at issue, will not authorize the introduction of evidence; and there being no *contestatio lists*, a judgment based upon such amended petition is null. Levy et al. vs. Webber et al. 8 Ann. 439; Brown vs. Brown, 21 Ann. 461; 12 Ann. 60; 4 La. 13; 2 La 130-392.

### *Wm. F. & D. C. Mellen* on the same side:

1. In the case of a writ of seizure and sale there is no authority of law for coupling petitions for damages for the wrongful issue of such writs with the petition for injunction without bond, based on art. 739, C. P. Such petitions cannot be coupled with a motion to dissolve the sequestration. Calling such petitions amended petitions or amended oppositions does not change their nature. They set up nothing in opposition.

2. Without first converting the proceedings *via executiva* into proceedings *via ordinaria*, such petitions cannot be treated as demands in reconvention. Where a writ of seizure and sale has been obtained *via executiva* and the defendant obtains an injunction against the execution of such a writ on the ground that the time of payment had been extended. under C. P. art. 739, and the original plaintiff files his answer to the petition of defendant for the injunction, the petitioner for injunction cannot set up a claim to damages by an amended petition or a demand in reconvention, even though the original plaintiff be a non-resident of the parish and State.

3. Nor can such amended petition be considered as a demand in reconvention against the petition for the writ of sequestration. There is no law authorizing a judgment for damages on the dissolution of a sequestration. A new action is required on the sequestration bond. A petition for damages is not in support of a motion to dissolve a sequestration. Nuzum vs. Gore, 24 Ann. 208.

4. That number of art. 739, C. P., which provides for an injunction without bond, in case of the extension of a debt, refers to an extension granted after the maturity of the debt, and not to that which may have been promised beforehand and is not embraced in the contract when signed. Vial vs. Moll, 37 Ann. 203.

5. B makes a loan to R. B promises R that in case of overflow or other great disaster, R will receive kind treatment at his hands, and the notes will be extended. Subsequently an overflow occurs, an extension is granted a first and again a second time. The extension being granted once by reason of overflow the promise has been fulfilled, and is no longer obligatory.

6. After two extensions granted by the creditor, and the second term granted having lapsed, the creditor was under no legal obligation to withhold proceedings. If the debtor believed she had a right to an additional extension by reason of overflow, it was her duty to ask for such extension and inform the creditor of the overflow. The seizing creditor cannot be held to have been premature or to have rendered himself liable for damages under such circumstances in the absence of such request from the debtor.

7. The application of the money borrowed by the wife to the purchase of mules in the name of the husband for work stock on the plantation mortgaged, the giving of a bill of sale by the husband on these same mules, to secure his own debt for borrowed money or supplies were, under the other circumstances of this case, sufficient to arouse the suspicions of the creditor, and taken in connection with his right to sequestrate all property mortgaged to him on the maturity of the debt (Gest Atkinson vs. N. O. St. Louis

Mortgage Company vs. Ralston.

and Chicago Railroad, 30 Ann. 28 and 29) there was sufficient warrant for the sequestration, and it should have been maintained.

8. The record shows no proof of actual damages. The only evidence is of prospective, hypothetical, imaginary damages. The writ of seizure and sale was never served. It was enjoined as soon as issued. The writ of sequestration was served on six mules and several articles of movable property; but the seizure was only nominal. The property was on the instant turned over to the husband of the plaintiff living on the plantation, and by him turned over to the manager of the plantation. The plantation was never for a moment without the use of the articles seized. Bonner vs. Copley, 15 Ann. 504.

9. The judgment allows interest from judicial demand. This is error. 1 Ann. 382 ; 15 Ann. 504; 37 Ann. 497.

*Wade R. Young* for Mrs. E. J. Ralston and husband, Appellees.

The opinion of the Court was delivered by

Poché, J. Holding past due mortgage notes executed by Mrs. Ralston, plaintiffs sued out executory process on the property subjected thereto, and on the same day, they obtained, in aid of their executory proceedings, a writ of sequestration of several mules and other movable property attached to the mortgaged plantation.

Mrs. Ralston obtained an injunction on the executory process, before seizure, and without bond, on the ground that time had been granted her for paying the debt; and she filed a motion to dissolve the writ of sequestration on the ground that it had wrongfully issued, on allegations that were false and entirely unfounded.

In amended pleadings, which her counsel calls oppositions, and which the district judge treated as amounting together to an answer to the petition for the writ of seizure and sale, she alleged great injury to result to her property, to her credit and to her probable future earnings, amounting to $10,000, from each of the writs which had been wrongfully obtained against her, and she prayed for a judgment in damages therefor.

On motion of her counsel, the two cases, the motion to dissolve the writ of sequestration and all the pleadings and demands were consolidated by order of the district court, and all were tried together, in an incongruous undefinable mass, resulting in a judgment which dissolved the writ of sequestration, perpetuated the preliminary injunction, and condemned the seizing creditors to pay to their former debtor the sum of $3,175 and interests, as damages for their wrongful acts in their unlawful attempt to enforce payment of their claims against Mrs. Ralston.

The seizing creditors have appealed and the seized debtor has prayed for an amendment with a view to the increase of damages to the sum of ten thousand dollars.

The amount of the seizure was for four thousand dollars.

The mortgage on which the suit is based, was executed on the 23d of December, 1881, and was intended to secure a loan of $6,000 represented by three notes of $2,000 each, maturing respectively on the first days of January, 1883, 1884 and 1885.

The two writs were issued on the 17th of November, 1884, a short time previous to the maturity of the last note, hence the latter note was not in suit.

The agreement to grant time for paying the debt is alleged to result from the following letter written by the alleged agents of the plaintiff company:

NEW ORLEANS, November 9, 1881.

*Col. George Ralston, Waterproof, Tensas Parish, Louisiana:*

DEAR SIR—In case of overflow or any other great disaster, Mrs. Ralston may feel sure that she will receive kind and honorable treatment at our hands, and that the time of the notes will be extended.

You will oblige us by filling up and returning our regular form of application, one of which we sent you in our last.

Yours truly,

SHATTUCK & HOFFMAN.

The contention on the part of Mrs. Ralston is that Shattuck and Hoffman had full and unlimited power and authority to bind the plaintiffs in all contracts and stipulations, and that their consent to extend the payment of her notes in the event of an overflow was the condition precedent on which she had agreed to accept the proffered loan with mortgage on her plantation, and that by reason of overflows which occurred in 1882, 1883 and 1884, the anticipated suspensive condition went into full effect, and that therefore payment of the notes was not exigible when this suit was brought.

It appears, from a comparison of dates, that the letter relied on was written more than one month previous to the execution of the mortgage, and the record shows that it formed a part of the negotiations which led to the contract as adopted on the 23rd of December, 1881. If the condition mentioned had been adopted as a part of the contract, it would doubtless have been included in the act of mortgage.

The maturity of each note is evidenced by the tenor of the same, and is authenticated in the act of mortgage which contains no suspensive condition whatever, and the authentic act must be held as containing the true and real agreement of the parties thereto. The fact that a previous project of a stipulation is not contained in the authentic act which evidences the final contract entered into by the parties is of

itself, and must be held in law, as a conclusive indication of its aban-
donment by mutual consent.

If the stipulation had been included in each of the notes or recited
in the act of mortgage, the case would be entirely different and it
would then fall under the authority of the case of Marsh vs. Foster, 11
Ann. 182, so confidently invoked by appellee's counsel.

In that case, the clause providing for a suspensive condition depend-
ing upon the happening of a future event, was included in each of the
mortgage notes, and the Court held that proof of the happening of the
stipulated event would operate as a suspensive condition.

But, in this case, we are asked to hold that the maturity of notes
determined at a fixed time by the contract, must be controlled by an
agreement which forms no part of the contract, but which is of ante-
rior date, and that under the 4th paragraph of art. 739 of the Code of
Practice, an executory proceeding can be enjoined on a sworn allega-
tion of some indefinite understanding between the parties previous to
and making no part of the contract sought to be enforced.

Under such a construction authentic acts would be stripped of all
the certainty and binding effect with which the law contemplates to
surround them, when it declares that "the authentic act is full proof of
the agreement contained in it, against the contracting parties and
their heirs or assigns," "unless it be declared and proved a forgery."

The agreement by which time has been granted for paying the debt
held out by the Code to a seized debtor as a ground of injunction,
refers unmistakably to a subsequent event, and not to an agreement
which antedates the creation of the debt. How could anyone agree to
grant time for the payment of a debt, before the maturity of the debt
had been fixed or determined upon? Hence, in the case of Vail vs.
Moll, 37 Ann. 205, this Court said: "The portion of the article of the
Code of Practice (739) which provides that the debtor can arrest the
sale, where time has been granted to him, although this circumstance
be not mentioned in the contract, can, have no reference to time granted
*before*, and can only mean time granted *after* the date of the contract."
On that point the Court was unanimous, the difference of opinion
being only as to the status of the debt at the time that the alleged
agreement to grant time had been made.

We are clear in our conviction that the ground of injunction ad-
vanced by the defendant in execution could find no sanction under the
provisions of art. 739 of the Code of Practice.

But, in justice to plaintiffs, it must be observed, as it appears from
the record, that they did not lack in indulgence towards their debtor,

whose notes were allowed to run from January, 1883, and January, 1884, to November, 1884, and who did not proceed until it appeared conclusive that their debtor had no means to pay the taxes on her property, or the arreared interests on her notes, or to defray the necessary expenses of cultivation.

In considering this point, we have assumed *arguendo* that Shattuck and Hoffman had the legal authority to contract in the name of plaintiffs, but we must not be understood as passing on that question, which is seriously controverted by plaintiffs, and which remains undecided. We yielded the benefit of the argument to the defendant in execution with the result as above announced.

. The ground on which plaintiffs rested their claim for a sequestration of the mules and other movables attached to the mortgaged plantation, was the fear that the same would be removed beyond the jurisdiction of the court during the pendency of their suit, and that fear rested on a bill of sale, (known as a chattel mortgage at common law), which had been made of these mules, to residents of the State of Mississippi by the defendant's husband since the date of the mortgage, and for a debt which had not yet been satisfied when the executory process was begun.

That circumstance was more than sufficient to legally justify the fear which Article 275 of the Code of Practice contemplates; and no creditor could in reason or in law be expected or required to procrastinate until the mules had been removed to Mississippi, which could be accomplished in a few minutes, by merely crossing the river with them.

In this connection we note that in her testimony Mrs. Ralston states that the mules which were sequestered herein, were the lawful property of her husband.

If such be the case, her motion to dissolve that writ must fall because she is without interest in the proceedings, and hence she can recover no damages whether the sequestration was wrongfully obtained or not; and if they are part of the mortgaged plantation, the writ is good because it was based on sufficient grounds to justify the fear and belief that plaintiffs would otherwise have lost their recourse on them.

Having thus reached the conclusion that plaintiffs were legally entitled to both the writs which they sued out in this case, we are not concerned with the injury which their proceedings may have caused to their unfortunate debtor, who is, therefore, in no worse legal condition than all other debtors who cannot meet their just and past due liabilities, and whose property is in consequence subjected by law to the action of their creditors.

Under these views of the controversy we eliminate from discussion several important questions of practice involving the right of a defendant in execution to cumulate with an injunction under art. 739, Code of Practice, a demand in damages for a wrongful seizure; as well as the legal definition and classification of the amended pleadings interposed by the defendant in execution under executory process.

It is therefore ordered, that the judgment appealed from be annulled, avoided and reversed. It is now ordered that the injunction herein granted to Mrs. Ralston, the defendant, be dissolved, that the writ of sequestration herein sued out by plaintiffs be sustained, and the motion to dissolve it, overruled and dismissed, and the demand of defendant for damages be rejected, and that she be condemned to pay all costs in both courts.